IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| BENJAMIN MICHAEL MERRYMAN et al. | | PLAINTIFFS |
| V. | CASE NO. 5:15-CV-5100 | |
| JPMORGAN CHASE BANK, N.A. | | DEFENDANT |

and

| | | |
|---|---|---|
| BENJAMIN MICHAEL MERRYMAN et al. | | PLAINTIFFS |
| V. | CASE NO. 5:15-CV-5129 | |
| CITIGROUP, INC. et al. | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court in Case No. 5:15-cv-5100 are Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan") Motion to Dismiss (Doc. 20), Brief in Support (Doc. 21), and supporting declarations (Docs. 22, 23); Plaintiffs Benjamin Michael Merryman's, Amy Whitaker Merryman Trust's, and B Merryman and A Merryman 4th Generation Remainder Trust's (collectively, "Merryman") Memorandum in Opposition (Doc. 33); and JPMorgan's Reply (Doc. 35). Also currently before the Court in Case No. 5:15-cv-5129 are Defendants Citigroup, Inc.'s, Citibank, N.A.'s, and Citigroup Global Markets Inc.'s (collectively, "Citigroup") Motion to Dismiss (Doc. 17) and Brief in Support (Doc. 18); Plaintiffs Benjamin Michael Merryman's, Amy Whitaker Merryman Trust's, Benjamin Michael Merryman Trust's, and B Merryman and A Merryman 4th Generation Remainder Trust's (collectively, "Merryman") Memorandum in Opposition (Doc. 27); and Citigroup's

1

Reply (Doc. 28). For the reasons stated below, JPMorgan's and Citigroup's Motions are both **GRANTED**, and both cases are **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[1]

## I. BACKGROUND

On May 1, 2015, Plaintiffs filed a Class Action Complaint in this Court against JPMorgan, asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, and conversion. (Case No. 5:15-cv-5100, Doc. 1). The finer details of Plaintiffs' factual allegations against JPMorgan are rather complicated, but the following language from the Complaint adequately summarizes Plaintiffs' claims for our present purposes:

- that JPMorgan "serves as a depositary bank for the issuance of American Depositary Receipts ('ADRs') and in that capacity is charged with certain contractual and implied obligations to the holders of the ADRs";
- that Plaintiffs are among the holders of the ADRs; and
- that "JPMorgan breached its contractual duties . . . by secretly assigning unfavorable foreign exchange ("FX") rates applied to the conversion of non-U.S. dollar-based Cash Distributions by foreign companies prior to issuing those payments to ADR Holders, and unlawfully keeping the spread between the FX rate the Bank actually received at the time of the conversion and the rate JPMorgan charged its clients."

---

[1] These two cases were consolidated solely for purposes of the Motions addressed in this Order. In this Order, the plaintiffs in both cases are collectively referred to as "Merryman" or "Plaintiffs," and JPMorgan and Citigroup are sometimes collectively referred to as "Defendants."

2

*Id.* at ¶¶ 1, 3.  On June 2, 2015, Plaintiffs filed a Class Action Complaint in this Court against Citigroup, also asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, and conversion, which were premised on factual allegations that can, for our present purposes, be fairly summarized in language identical to the summary of those against JPMorgan above. (Case No. 5:15-cv-5129, Doc. 1, ¶¶ 1, 3).

JPMorgan and Citigroup filed their respective Motions to Dismiss on July 10, 2015, and both Motions have now been fully briefed and are ripe for decision.  Defendants advance a variety of different arguments and theories in favor of dismissal or transfer, but since this Court is persuaded that it lacks personal jurisdiction over Defendants in this case, it will not reach any of the other arguments posited in their briefs.

## II. LEGAL STANDARD

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted).  The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).  However, Merryman bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Wells Dairy*, 607 F.3d at 518. "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

The Arkansas long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101. Therefore, the only question here is whether the exercise of personal jurisdiction over JPMorgan and Citigroup is constitutionally permissible. "Due process requires 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice,'" and "such that [the] defendant 'should reasonably anticipate being haled into court there.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 297 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Like any standard that requires a determination of reasonableness, the minimum contacts test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." *Kulko v. Superior Court of California In and For City and County of San Francisco*, 436 U.S. 84, 92 (1978) (internal quotation marks omitted). There are two types of personal jurisdiction that may be exercised: general or specific. *Viasystems, Inc. v. EMB-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).

### III. DISCUSSION

#### A. General Jurisdiction

Traditionally—and as law students were taught for decades—general-jurisdiction analysis could be argued to have focused simply on whether a defendant had contact "of a continuous and systematic nature" with the forum state, *see Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), but "[i]n recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for [general] jurisdiction," *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). In 2011, the Supreme Court explained in a unanimous opinion by Justice Ginsburg that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic *as to render them essentially at home in the forum State.*" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted, emphasis added). Then in 2014, Justice Ginsburg further elaborated in a nearly-unanimous[2] opinion that "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). In *Goodyear* and *Daimler*, the Supreme Court identified "the place of incorporation and principal place of business" as "paradigm bases for general jurisdiction" over a corporation. 134 S. Ct. at 760 (alterations omitted). And while the *Daimler* Court was careful to note that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," the *Daimler* Court explicitly refused to "look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business," terming such a formulation "unacceptably grasping." *Id.* at 760-61 (internal quotation marks omitted).

---

[2] Justice Sotomayor concurred separately in the judgment, but not for the reasons advanced in the majority opinion.

5

In *Daimler*'s most pertinent passage, the Supreme Court wrote:

> Here, neither Daimler nor [its subsidiary] is incorporated in [the forum state of] California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [Daimler's American subsidiary]'s sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Merryman presents no evidence—nor could they—that Arkansas is either defendant's state of incorporation or primary place of business. Instead, Merryman presents a good deal of evidence that JPMorgan and Citigroup both engage in substantial amounts of lending within the state of Arkansas, have interactive websites available to Arkansas residents, and own real property in Arkansas.[3] Merryman also presents a good deal of evidence that JPMorgan has initiated non-judicial foreclosures in Arkansas, and that Citigroup has been subject to several investigations and enforcement actions by the Arkansas Securities Department. But Merryman offers no evidence or argument to explain why Defendants' contacts with Arkansas are more significant than the contacts they would have with any other state.[4] Instead, Plaintiffs would have the Court do the very thing *Daimler* forbids: "look[ing] beyond the exemplar bases *Goodyear* identified, and

---

[3] Additionally, Merryman presents evidence that Citigroup has designated a registered agent for service of process in Arkansas. However, Ark. Code Ann. § 4-20-115 explicitly states that "[t]he appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state."

[4] Furthermore, it seems clear to the Court from the evidence in the record—even viewed in the light most favorable to Plaintiffs—that Merryman would be unable to do so even if permitted an unlimited amount of discovery on the matter.

6

approv[ing] the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Id.* at 760-61.

Under these circumstances, there is simply no theory available to the Court by which it could exercise general jurisdiction over JPMorgan or Citigroup that would not "be available in every other State in which" their business activities "are sizable." Therefore, under *Daimler* and *Goodyear*, this Court does not have general jurisdiction over these defendants. Merryman protests that such a reading of *Daimler* is "ludicrous," and that "*Daimler* simply does not overturn the entire body of developed caselaw on general jurisdiction." (Case No. 5:15-cv-5100, Doc. 33, p. 19; Case No. 5:15-cv-5129, Doc. 27, pp. 18-19). However, this Court believes the plain language of *Daimler* and *Goodyear* cannot be read as anything other than a significant narrowing of general jurisdiction's scope, such that it cannot be exercised here. Whether this evolution in the law of general jurisdiction is "ludicrous" is not for this Court to decide, but there can be no doubt the change has occurred, is a rather dramatic departure,[5] and requires a different ruling in the instant case than would likely have been reached under the old regime.

### B. Specific Jurisdiction

The Court turns, then, to the issue of specific jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." *Viasystems*, 646 F.3d at 593 (internal quotation marks and alterations omitted). The Eighth Circuit provides a five-factor test that must be used in analyzing whether personal jurisdiction may be exercised over a defendant, with the first

---

[5] "Referring to the 'continuous and systematic' contacts inquiry that has been taught to generations of first-year law students as 'unacceptably grasping,' the majority announces the new rule . . . ." *Daimler*, 134 S. Ct. at 770 (Sotomayor, J., concurring).

three of these factors being especially important: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of those contacts with the cause of action; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). However, the Court need not belabor a factor-by-factor analysis here, because "[s]pecific jurisdiction can *only* be found if the controversy *is related to or arises out of* the defendant's contacts with the forum state." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (emphasis added, internal quotation marks omitted). Put another way, "the defendant's *suit-related conduct* must *create* a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126.

None of the contacts between JPMorgan or Citigroup and Arkansas that were described *supra* in this Court's discussion of general jurisdiction (lending activities, websites, etc.) are argued to have given rise to the instant controversies. Rather, Plaintiffs contend that specific jurisdiction exists here because the contracts at issue required payment to Plaintiffs, who happen to be located in Arkansas. They cite the Eighth Circuit cases of *Tyson Fresh Meats, Inc. v. Lauer Ltd., L.L.C.*, 918 F. Supp. 2d 835, 849 (8th Cir. 2013), and *Papachristou v. Turbines, Inc.*, 902 F.2d 685, 686 (8th Cir. 1990), in support of this argument. However, there is a critical distinction between these cases and the instant ones: while the contracts in *Tyson* and *Papachristou* explicitly contemplated the delivery of goods to specific locations in those cases' respective forum

states, the contracts giving rise to the instant action do not.[6]  This is a very important distinction because under controlling precedent, "[d]ue process allows a state to assert personal jurisdiction over a defendant based on the in-state effects of defendants' extraterritorial tortious acts *only* if those acts . . . were uniquely or expressly *aimed* at the forum state." *Viasystems*, 646 F.3d at 594 (emphasis added).

    Merryman has not presented any evidence that the instant contracts uniquely or explicitly targeted Arkansas, nor has Merryman argued or alleged that any such evidence might exist.  There is no evidence or allegation that Defendants negotiated the contracts in Arkansas, that the contracts are secured by any property located in Arkansas, or that the contracts otherwise contemplate Arkansas in any way.  Nor could there be—as JPMorgan aptly observes in its Reply, "[t]he ADRs at issue here are publicly traded, and the identity and location of the person or entity at the end of the ADR payments stream on a particular day is pure happenstance and not the result of [JPMorgan]'s volition." (Case No. 5:15-cv-5100, Doc. 35, p. 19) (citing *In re Libor-Based Fin. Instruments Antitrust Litigation*, 2015 WL 4634541, at *26 (S.D.N.Y. Aug. 4, 2015) ("These securities may arrive in the hands of plaintiffs and other investors anywhere in the world by the investors' own trades—not at the direction of the issuers.  Such a fortuitous, plaintiff-driven contact cannot support personal jurisdiction.")).  Plaintiffs have demonstrated nothing more than that they are Arkansas residents who happen to be ADR Holders.  Ultimately, "[u]nder Plaintiffs' theory of jurisdiction, a national company could be sued by

---

[6] Indeed, Merryman does not cite—and this Court has been unable, in its own examination of the contracts, to independently identify—any contractual provision specifically contemplating payment or delivery of anything at all to any resident of, or location in, Arkansas.

any resident of any state in any state. This does not comport with 'traditional notions of fair play and substantial justice' as required by the Constitution." *Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *3 (E.D. Mo. July 1, 2015) (quoting *Daimler*, 134 S. Ct. at 754).

### C. Jurisdictional Discovery

Finally, Plaintiffs argue that "[i]f the Court is reluctant to exercise personal jurisdiction based on the contacts highlighted above," then "the Court should allow Plaintiffs to conduct limited, jurisdictional discovery" into Defendants' "contacts to and business within Arkansas." (Case No. 5:15-cv-5100, Doc. 33, p. 21; Case No. 5:15-cv-5129, Doc. 27, p. 30). Whether to permit additional jurisdictional discovery is committed to this Court's discretion, which should be exercised with an eye toward whether "facts necessary to resolving the jurisdictional inquiry are either unknown or disputed." *Viasystems*, 646 F.3d at 598. This Court believes, from its review of the pleadings and evidence already in the record, that jurisdictional discovery would not provide any further illumination of these matters. No dispute can reasonably be said to exist over whether any of the defendants are incorporated in Arkansas or have Arkansas as their primary place of business, or whether Plaintiffs' claims are premised on acts that were uniquely or expressly aimed at Arkansas. At bottom, these parties' disagreement regarding personal jurisdiction is not a factual one; it is a legal one. No amount of discovery will change the applicable law.

### IV. CONCLUSION

For the reasons expressed above, the Court finds that Plaintiffs have not carried their burden of establishing a prima facie case that this Court can assert personal jurisdiction over JPMorgan and Citigroup. **IT IS THEREFORE ORDERED** that Defendant

JPMorgan Chase Bank, N.A.'s Motion to Dismiss (Case No. 5:15-cv-5100, Doc. 20) and Defendants Citigroup, Inc.'s, Citibank N.A.'s, and Citigroup Global Markets, Inc.'s Motion to Dismiss (Case No. 5:15-cv-5129, Doc. 17) are both **GRANTED**. Both cases are **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

**IT IS SO ORDERED** on this 19th day of November, 2015.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE